FILED
CLERK, U.S. DISTRICT COURT

February 24, 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___VPC___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO FERNANDEZ,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>STEPHEN A. FISHER, in individual and representative capacity as trustee of the Stephen A. Fisher and Stephanie L. Fisher Family Trust; STEPHANIE L. FISHER, in individual and representative capacity as trustee of the Stephen A. Fisher and Stephanie L. Fisher Family Trust; and O'REILLY AUTO ENTERPRISES, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　Defendants. | Case No. 2:19-cv-06036-SB-JEM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial:  February 23, 2021 |

　　　The Court held a bench trial in this case on February 23, 2021 at 8:30 a.m. Plaintiff Antonio Fernandez was represented at trial by Raymond G. Ballister, Jr. Defendants Stephen A. Fisher, Stephanie L. Fisher, and O'Reilly Auto Enterprises,

1

LLC (Defendants) were represented at trial by Peter S. Doody. All witnesses submitted their direct testimony by declaration. The parties stipulated to the admission of the written direct testimony of Plaintiff's witness Evens Louis without cross-examination and to the admissibility of Plaintiff's exhibits 1 through 6. The parties also stipulated that the Court could consider the declarations previously submitted by Plaintiff and Mr. Louis in support of Plaintiff's summary judgment motion. After evaluating the evidence at trial, including witness credibility, the Court issues the findings of fact and conclusions of law set forth below.

## FINDINGS OF FACT[1]

1. Plaintiff is disabled within the meaning of the Americans with Disabilities Act (ADA).

2. The Stephen A. Fisher and Stephanie L. Fisher Family Trust (the Trust) owned the real property located at 3431 E. Caesar E. Chavez Avenue, Los Angeles, California, in June 2019. The Trust currently owns that same real property.

3. O'Reilly Auto Enterprises, LLC (O'Reilly) owned and operated the O'Reilly Auto Parts store, located at 3431 E. Caesar E. Chavez Avenue, Los Angeles, California (Store), in June 2019. O'Reilly currently owns and operates the Store. The Store is a business establishment open to the public.

4. The Store has several counters for customer transactions: a number of higher counters; and one lower counter that is undisputedly ADA-compliant as built.

5. Plaintiff visited the Store on June 17, 2019.

6. The distance between the Store and Plaintiff's home is unclear because Plaintiff provided inconsistent statements at trial: Plaintiff provided a specific estimate in his written direct testimony, stating that the Store is less than ten miles

---

[1] The characterization of a finding as one of "fact" or "law" is not controlling. To the extent that a finding is characterized as one of "law" but is more properly characterized as one of "fact" (or vice versa), substance shall prevail over form.

2

from his home (Dkt. No. 84-1 ¶ 25); on cross-examination, however, Plaintiff testified he had no idea whatsoever about the distance and could not even provide a rough estimate.

7. While visiting the Store, Plaintiff purchased a fuse. Plaintiff did not conduct his transaction at the lower counter. The transaction occurred at one of the higher counters.

8. Plaintiff provided at least three different accounts of his interaction with the sales associate at the Store during his transaction.

9. In his declaration submitted in support of Plaintiff's motion for summary judgment, Plaintiff claimed he was not served at the lower counter because it was cluttered. He stated that he asked to be served at the lower counter, but the Store employee explained she would assist him at the higher counter because the lower counter was "full of stuff." Dkt. No. 52-5 ¶ 6. Plaintiff suggested that the problem was *the condition of the lower counter*, not the employee's willingness to assist him there. He declared: "I am currently deterred from visiting the Store because of my knowledge of the condition of sales counters. However, once it has been represented to me that the violations have been removed, I plan to visit the Store to shop and also to assess it for compliance with the access laws." *Id.* ¶¶ 13-14.

10. In his written direct testimony at trial, Plaintiff stated that he asked to be served at the lower counter, but that it was unstaffed and the sales associate—whom he specifically identified as being "female"—purportedly refused his request, "stating that the lowered counter was full of merchandise and that she could help [him] at the higher counter." Dkt. No. 84-1 ¶¶ 11, 14-17. This time, however, Plaintiff claimed that he was deterred from returning to the Store because he fears the employees will not assist him at the lower counter. After noting his eagerness to return to the Store because of its close proximity to his home and its ADA-accessible counter, he states: "I am currently not going back to the Store because I do not know the employees will help me at the lowered sales counter." *Id.* ¶¶ 25-27.

11. During his re-direct examination at trial, Plaintiff testified that he interacted with a male (not a female) employee. He stated that when he asked to be served at the lower counter, the male employee told him that it would be too burdensome to change registers because there were other people waiting in line, there was no money in the register at the lower counter, and the male employee would have to set up the register at the lower counter. Plaintiff repeated several times that the male employee told Plaintiff that the register at the lower counter was not set up to serve customers.

12. During re-cross examination, Plaintiff stated that employee was female (not male), and that the female employee did not provide any specific reason for refusing to serve Plaintiff at the lower counter.

13. Plaintiff has not returned to the Store since June 17, 2019. As noted, he has provided two different explanations for not returning—the cluttered condition of the lower counter (the summary judgment position); and the employee's purported refusal to assist him at the lower counter (the trial position).

14. The shift in position is unmistakable. Plaintiff previously moved for summary judgment on the grounds that the lower counter was too cluttered to allow him to conduct his transaction there. In furtherance of this barrier theory, Plaintiff sought "an injunction requiring Defendants to provide and maintain an accessible sales counter at the Store." Dkt. No. 52-1 at 17. There was no request for a modification of any policy or practice.

15. At trial, Plaintiff abandoned his barrier theory and advanced a new theory that Defendants have a policy or practice of refusing to serve customers with disabilities at the lower counter. Plaintiff testified that the items he saw on that counter readily could be removed if only the Store employee were willing. Plaintiff's counsel remarked in his closing argument that this case is not about easily removeable counter clutter but about an employee's "apparently groundless refusal" to serve Plaintiff at the lower counter. Plaintiff's counsel requested an injunction requiring

Defendants to establish and maintain "a policy, practice, and procedure" of serving persons with disabilities at the lower counter.

16. Jose Montellano, a Regional Manager for O'Reilly, testified at trial. The Store is within his region. Dkt. No. 83 ¶ 2. Mr. Montellano testified that O'Reilly's policy is to comply with Title III of the ADA and its accessibility requirements, and that O'Reilly provides ADA training to Store team members to ensure they are knowledgeable and compliant. *Id.* ¶ 5.

17. Mr. Montellano testified that the Store does not have a policy or practice of refusing to serve a person with disabilities at the lower counter, and that an employee's refusal to serve a person in a wheelchair at the lower counter would be contrary to policy. The Court found this testimony to be credible.

18. On the other hand, the Court generally did not find Plaintiff to be credible. Plaintiff appeared to be more of an advocate than a witness—and an advocate who was careless with the facts and emboldened by his cause. Even a worthy cause is bound to honor the solemnity of the oath and respect the integrity of the judicial system.

## CONCLUSIONS OF LAW

19. The elements of proof of a "policy claim" under the ADA, as set forth in *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004), are distinct from the elements of proof of a "barrier claim" under the ADA. *See Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1012 (9th Cir. 2017) (noting the differences between ordinary "architectural barriers" claims and "policy or practice" claims).

20. A barrier claim requires a plaintiff to "show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability."

*Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Though Plaintiff moved for summary judgment on a barrier theory, he inexplicably abandoned the barrier theory at trial.

21. Even if he had not abandoned this theory, the Court would find it meritless. Based on the undisputed evidence, including Plaintiff's trial testimony, the items on the lower counter presented no barrier to service. The items located on the service portion of the lower counter when Plaintiff visited were placed there temporarily, would have been removed in the ordinary course of business, and readily could have been removed to assist a customer. The only contrary evidence is the declaration Plaintiff submitted in support of his summary judgment motion, which Plaintiff later contradicted and which the Court does not find credible.

22. To make a policy or practice claim, Plaintiff must establish: "(1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune*, 364 F.3d at 1082.

23. Plaintiff is required to prove each element of his policy or practice claim by a preponderance of the evidence. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020) (plaintiff bears the burden on an ADA claim).

24. Plaintiff proved the first two elements—that he is "disabled" and that Defendants are private entities that own, lease, or operate a place of public accommodation. But Plaintiff failed to carry his burden of proof on the final two elements.

25. Plaintiff presented no credible evidence of a policy or practice of discrimination. He claims to have had a single encounter during which an employee purported to refuse him service at the lower counter. Even if that claim were truthful, a single encounter does not establish a policy or practice. The Court credits the

testimony of Mr. Montellano and finds that a Store employee's refusal to serve a person with disabilities at the lower counter is contrary to company policy and practice. Because there was no policy or practice, Plaintiff also cannot show that Defendants discriminated against him by failing to reasonably modify a policy or practice. See *Fortyune*, 364 F.3d at 1082 (stating the requirements of the fourth element).

26. The Court further finds that Plaintiff lacks standing to seek an injunction. This requires a showing of a "real and immediate threat" of recurrence of the alleged injury. *Fortyune*, 364 F.3d at 1082 (quoting *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). In view of Plaintiff's shifting testimony about his encounter and purported reluctance to return, the Court does not find it credible that Plaintiff intends to return to the Store to shop (or for any non-litigious purpose) or that he is deterred by his June 17, 2019 encounter. The Court therefore concludes that the chance of recurrence is remote.

27. Plaintiff has not proven his claim under Title III of the ADA. The Court finds in favor of Defendants and against Plaintiff. Defendants are to submit a form of judgment in Word format to the chambers email address by no later than **March 1, 2021**.

Dated: February 24, 2021



_____
Stanley Blumenfeld, Jr.
United States District Judge